**UNITED STATES of America ex rel. Melvin CHATMAN, Petitioner,**

v.

**Michael LANE, Director, Illinois Department of Corrections and James Theirit, Warden, Graham Correctional Center, Respondents.**

**No. 83 C 519.**

United States District Court,
N.D. Illinois, E.D.

Nov. 4, 1983.

Mr. Steven Clark, Deputy State Appellate Defender, Bruce Mosbacher, Asst. State Appellate Defender, Chicago, Ill., for petitioner.

Neil F. Hartigan, Atty. Gen., State of Ill. by Kenneth A. Fedinets, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM ORDER

BUA, District Judge.

Melvin Chatman was charged with armed robbery in the Circuit Court of Cook County. After a jury trial, he was found guilty and sentenced to 18 years imprisonment. The Illinois Appellate Court, with one Justice dissenting, affirmed the conviction. *People v. Chatman*, 105 Ill.App.3d 276, 61 Ill.Dec. 156, 434 N.E.2d 309 (1st Dist.1982). Leave to appeal was denied by the Illinois Supreme Court.

Chatman filed this petition for a writ of habeas corpus claiming that the trial judge denied his Sixth and Fourteenth Amendment rights to present a "key defense witness" as a sanction for Chatman's "de minimus violation" of an Illinois discovery rule. On May 17, 1983, this Court ruled that Chatman had exhausted his state remedies as required by 28 U.S.C. § 2254. Presently before the Court are Chatman's and respondents' cross motions for summary judgment.[1] Jurisdiction is invoked pursuant to 28 U.S.C. § 2254. For the reasons stated herein, Chatman's motion for summary judgment is denied and respondents' motion for summary judgment is granted.

## I. FACTS

Hattie Sherry testified for the prosecution at trial that on December 23, 1976, she

---

1. Respondents' motion, filed June 8, 1983, is entitled, "Supplemental Answer To The Petition For Writ of Habeas Corpus And Motion To Deny The Petition With Supporting Memorandum of Law." Based upon the affidavit of Chatman's attorney, Bruce Mosbacher, the Court has treated this motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

was a salesperson at Sam's Variety Store in Chicago. She was working alone at the cash register when she noticed a man, whom she later identified as Chatman, entered the store. The man used the telephone and left. Minutes later, the man returned and asked Sherry for change. During this conversation Sherry observed the man's face at the distance of approximately one foot. At this point, the man pointed a gun at Sherry and demanded that she turn over money from the register, her wallet and another gun. Sherry complied with his request.

When the police arrived, Sherry described the man as having a goatee and straggly hair on his cheeks. In January of 1977, Sherry identified Chatman's picture from a police mug book. Two days after the photographic identification, Sherry identified Chatman in a lineup.

At trial, Sherry again identified Chatman as the same man who robbed her on December 23, 1976. On cross-examination, Sherry was questioned regarding a prior description she gave at a preliminary hearing which was apparently inconsistent with her testimony at trial. Specifically, defense counsel cross-examined Sherry as follows:

MRS. HUBBARD [defense attorney]: Were you asked this question, and did you give this answer? "QUESTION: Did the individual have sideburns?" "ANSWER: No, he had a mustache and beard."

Were you asked that question and did you give that answer?

MS. SHERRY [complaining witness]: I am thinking about,—I really don't remember that.

MRS. HUBBARD: "QUESTION: A full beard?" "ANSWER: Yes."

Were you asked that question and did you give that answer?

MS. SHERRY: I am thinking back. I really don't remember that.

MRS. HUBBARD: "QUESTION: A full beard?" "ANSWER: Yes."

Were you asked that question and did you give that answer?

MS. SHERRY: Yes, I remember giving that answer.

MRS. HUBBARD: "QUESTION: And full mustache?" "ANSWER: Yes."

Were you asked that question and did you give that answer?

MS. SHERRY: Yes.

MRS. HUBBARD: "QUESTION: When you say a full beard like the Public Defender here?" "ANSWER: Yes."

Were you asked that question and did you give that answer?

MS. SHERRY: I don't remember.

MRS. HUBBARD: Do you recall seeing in that courtroom a bearded person who was pointed out to you?

MS. SHERRY: Yes.

MRS. HUBBARD: Page, two, "QUESTION: He had hair up to the cheek bone?" "ANSWER: Yes."

\*       \*       \*       \*       \*       \*

By MRS. HUBBARD: Were you asked that question as directed and did you give that answer?

MS. SHERRY: Yes.

MRS. HUBBARD: The person with the bushy beard was pointed out in the courtroom, do you recall whether that person was called Tod Smith?

MS. SHERRY: I don't remember the name.

After Sherry testified, defense counsel requested that Tod Smith, the public defender whom Sherry referred to at the preliminary hearing as having a full beard similar to the man who robbed her, be allowed to testify at trial. Defense counsel made an offer of proof that Smith's beard was in the same condition at the time of trial as it was at the preliminary hearing. The trial judge refused Chatman's request to call Smith because Smith had not been listed as a potential witness in Chatman's response to the State's discovery request.

## II. DISCUSSION

The issue presented in this petition is whether Chatman was denied his Sixth Amendment right to confront witnesses by

the trial court's order precluding Tod Smith from testifying as a sanction for Chatman's violation of an Illinois discovery rule. The issue appears to be one of first impression in this circuit. The Supreme Court and the Court of Appeals for the Seventh Circuit have expressly declined to decide the issue. *See Williams v. Florida,* 399 U.S. 78, 83 n. 14, 90 S.Ct. 1893, 1897 n. 14, 26 L.Ed.2d 446 (1970) and *United States ex rel. Veal v. DeRobertis,* 693 F.2d 642, 647 (7th Cir. 1982).

Chatman argues that *United States v. Davis,* 639 F.2d 239 (5th Cir.1981), is controlling and requires summary judgment in his favor. The *Davis* Court held that a trial court's exclusion of evidence in a criminal trial solely as a sanction to enforce a discovery rule violates the compulsory process clause of the Sixth Amendment. Respondents rely upon *United States v. Rogers,* 475 F.2d 821 (7th Cir.1973), which articulates a balancing test to be applied when a witness in a criminal trial exercises a privilege and refuses to testify. Under *Rogers,* a defendant's Sixth Amendment right is violated only when the "defendant's inability to make the inquiry create[s] a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony." *United States v. Rogers,* 475 F.2d 821, 827 (7th Cir.1973), (quoting *Fountain v. United States,* 384 F.2d 624, 628 (5th Cir.1967)). Respondents urge this Court to utilize the *Rogers* balancing test rather than the per se rule adopted by the Fifth Circuit in *Davis.* The Court, however, need not decide which standard is applicable because under either standard summary judgment should be rendered in respondents' favor.

A. *The Fifth Circuit Per Se Rule*

In *United States v. Davis,* 639 F.2d 239 (5th Cir.1981), the prosecution relied heavily on the testimony of a confidential informant. On cross-examination, the informant was impeached with his prior convictions, his motive for cooperating with the government and by inconsistencies in his testimony. Defendant's counsel, however, was not allowed to further impeach the informant by presenting two character witnesses who were prepared to testify that the informant's reputation for truth and veracity was poor. The trial court excluded these witnesses because (1) their names were not disclosed pursuant to a discovery order and (2) their testimony would be cumulative. The Fifth Circuit held:

We find no justification for the exclusion of defense evidence solely as a sanction for the failure of a criminal defendant to comply with a discovery rule or order. *Id.* at 243. Having found the trial court's exclusion as constitutional error, the Fifth Circuit further held that because (1) no character witnesses called to impeach the informer had been admitted and (2) the credibility of the informant was "so crucial to conviction, we cannot find the error to be harmless beyond a reasonable doubt." *Id.* at 245.

Under *Davis,* the judge presiding at Chatman's trial improperly excluded the testimony of the public defender, Tod Smith. As noted by the Illinois Appellate Court, "[t]he court should have granted a recess for the express purpose of allowing the prosecution to interview the witness." *People v. Chatman,* 105 Ill.App.3d 276, 276, 61 Ill.Dec. 156, 434 N.E.2d 309 (1st Dist.1982). Faced with such an error, Chatman's conviction can stand only if the Court finds the error to be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

After a careful review of the record, the Court finds that the trial court's improper exclusion of Smith as a defense witness was harmless beyond a reasonable doubt. Credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the defendant under circumstances as would permit a positive identification to be made. *E.g. United States v. Smith,* 563 F.2d 1361, 1363 (9th Cir.1977). Sherry testified that she was face to face with Chatman during the robbery. Later, Sherry identified Chatman in a police mug book, at a lineup and finally in

court. The inconsistency between Sherry's description regarding facial hair at the preliminary hearing and at trial is not significant.

Moreover, Chatman was allowed full opportunity to present his case to the jury despite the trial court's exclusion of Smith. Sherry was extensively cross-examined concerning the description she gave at the preliminary hearing. Chatman's objective (impeachment of Sherry's credibility as an identification witness) was accomplished by that cross-examination. Accordingly, the Court finds there to be no reasonable likelihood that the testimony of Smith would have affected the jury's verdict.[2] Under the *Davis* standard, the trial court's decision to exclude Smith, although error, was beyond a reasonable doubt harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States ex rel. Nance v. Fairman*, 707 F.2d 936, 941–42 (7th Cir.1983); *Carbajol v. Fairman*, 700 F.2d 397, 401 (7th Cir.1983).

### B. *The Rogers Balancing Test*

■ In *United States v. Rogers*, 475 F.2d 821 (7th Cir.1973), the court articulated a balancing test to be utilized when, in a criminal case, a witness refuses to testify on Fifth Amendment grounds. In that situation, the defendant's Sixth Amendment right to confront witnesses is violated when the "defendant's inability to make the inquiry create[s] a substantial danger of prejudice by depriving him the ability to test the truth of the witness' direct testimony." *Id.* at 827, (quoting *Fountain v. United States*, 384 F.2d 624, 628 (5th Cir. 1967)). In applying this test, the Court must look to the record as a whole (*Rogers*, 475 F.2d at 827) and any alternative means open to the defendant to impeach the credibility of the witness. *United States v. Brown*, 634 F.2d 819, 825 (5th Cir.1981).

■ Based upon a review of the trial court record in this case, the Court finds that defense counsel was able to probe effectively Sherry's identification testimony. The alternative means of impeachment utilized by defense counsel, namely, emphasizing Sherry's prior inconsistent testimony at the preliminary hearing, was sufficient to satisfy the *Rogers* balancing test. Sherry admitted, during cross-examination, that she has previously described the man who robbed her as having a "full beard," "full mustache" and "hair up to the cheek bone." Given the effective alternative means of impeachment, the trial court's exclusion of Smith as a witness did not create a substantial danger of prejudice by depriving Chatman of the ability to test the truthfulness of Sherry's direct testimony.

### Conclusion

For the reasons stated herein, Chatman's motion for summary judgment is denied and respondents' motion for summary judgment is granted.

IT IS SO ORDERED.

---

**2.** Chatman submits an affidavit of a juror at his trial in support of his petition. The juror suggests that his vote would have been different had he seen evidence such as the "full beard" Sherry identified at the preliminary hearing. Respondents correctly argue, however, that Chatman's reliance upon the affidavit is improper because it intrudes into the sanctity of the jury's deliberations. Although courts may accept the testimony of jurors regarding improper *outside* influences, *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1982), "they have consistently refused to consider statements by jurors relating either to the subjective effect such influences might have had on them or to the mental processes through which they arrive at their verdict." *United States v. Green*, 523 F.2d 229 (2nd Cir.1975). *See also* Fed.R.Evid. 606(b).