William RONSON, Petitioner-Appellee,

v.

COMMISSIONER OF CORRECTION OF the STATE OF NEW YORK, Respondent-Appellant.

No. 793, Docket 79–2005.

United States Court of Appeals, Second Circuit.

Argued April 17, 1979.

Decided June 19, 1979.

Gerald J. Ryan, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, George D. Zuckerman, Asst. Atty. Gen., State of New York, New York City, of counsel), for respondent-appellant.

Frederick H. Block, New York City, for petitioner-appellee.

Before KAUFMAN, Chief Judge, SMITH, Circuit Judge, and MacMAHON, District Judge.*

PER CURIAM:

This is an appeal by the Commissioner of Correction for the State of New York from an order of the United States District Court for the Southern District of New York, Morris E. Lasker, Judge, granting after hearing an application for a writ of habeas corpus, on the basis that Ronson's sixth amendment rights were violated in his state court trial. We affirm.

William Ronson was charged in New York state court with the fatal shooting of his wife in 1972. Shortly after his arrest, Ronson was examined by two psychiatrists at Bellevue Hospital in New York for the purposes of determining his competence to stand trial. The doctors found him competent to be tried, but found that he had a "personality pattern disorder of the paranoid type."

Ronson was represented by several different attorneys until 1974, when he retained Irving Anolik, an attorney experienced in criminal cases. In October, 1974, after noting the opinion of the psychiatrists who examined Ronson on arrest, Anolik arranged for Ronson to undergo a second psychiatric examination, with Dr. David Abrahamsen. As a result of his examination, Dr. Abrahamsen reported his professional opinion that Ronson was not responsible for his criminal act.[1]

Anolik filed a copy of the psychiatrist's report with Justice Bloustein of the Supreme Court of Bronx County, the "calendar judge" on the case. In an accompanying letter on November 4, 1974, Anolik referred the judge to the doctor's report and noted, "As you can see from the report, there may be a very serious defense of insanity." Anolik asked that the report be kept confidential, at Ronson's request. In January, 1975, however, Anolik transmitted his approval of the judge's releasing the psychiatric report to the district attorney's office.

The trial was referred to a second judge in February, 1975. At trial, Anolik moved to call Dr. Abrahamsen as a witness to testify in support of a complete insanity defense on behalf of Ronson. The state objected on the ground that no notice of intention to raise such a defense had been given in accordance with New York Criminal Procedure Law § 250.10.[2] The trial judge refused to allow the defense to call Dr. Abrahamsen, although he did allow Ronson to testify on his own behalf on the

---

* Honorable Lloyd F. MacMahon, United States District Judge for the Southern District of New York, sitting by designation.

1. Dr. Abrahamsen's report noted:

    It is my considered opinion that William Ronson is not responsible for his criminal act, because at the time of this act, as a result of suffering from a schizophrenic condition he lacked substantial capacity to know or to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

    Under New York Penal Law § 30.05

A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity to know or appreciate either:

(a) The nature and consequence of such conduct; or

(b) That such conduct was wrong.

2. New York Criminal Procedure Law § 250.10 provides:

    Evidence of mental disease or defect of the defendant excluding criminal responsibility pursuant to section 30.05 of the penal law is not admissible upon a trial unless the defend-

issue of extreme emotional disturbance. The jury was unable to reach a verdict, and a mistrial was declared.

On March 7, 1975, Anolik wrote to the assistant district attorney noting that if a second trial took place, "the defendant reserves the right to interpose a specification of temporary insanity as a possible defense."

At retrial, Anolik again attempted to raise the temporary insanity defense in questioning one of the prospective jurors. The state objected, and the trial judge ruled that the insanity defense could not be interposed. Ronson was convicted of first degree manslaughter and sentenced to a 7 to 21-year term of imprisonment.

■■■ The sixth amendment to the Constitution guarantees to a criminal defendant the right of compulsory process to call witnesses in his favor.[3] This right is applicable to the states under the fourteenth amendment and is implicated when a defendant is barred from calling witnesses to testify on his behalf. *Washington v. Texas*, 388 U.S. 14, 19, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Singleton v. Lefkowitz*, 583 F.2d 618, 623 (2d Cir. 1978), *cert. denied*, 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486; *United States v. Melchor Moreno*, 536 F.2d 1042, 1046 (5th Cir. 1976). While a

defendant's right to call witnesses on his behalf is not absolute, a state's interest in restricting who may be called will be scrutinized closely. *See Washington v. Texas, supra*, 388 U.S. at 18–19, 87 S.Ct. 1920; *see also Williams v. Florida*, 399 U.S. 78, 83 n. 14, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). In this regard, maximum "truth gathering," rather than arbitrary limitation, is the favored goal. *See Wardius v. Oregon*, 412 U.S. 470, 474, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973); *Chambers v. Mississippi*, 410 U.S. 284, 296 n. 8, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). *See also Wainwright v. Sykes*, 433 U.S. 72, 88–90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[4]

■■■ In this case, New York's procedural rule § 250.10 requiring notice of intention to raise an insanity defense serves a legitimate purpose.[5] Advance notice to the state allows the prosecution to have the defendant examined by its own doctors, and to prepare a case in support of a theory of defendant's sanity. The New York statute provides for an exception to the notice requirement, however. CPL § 250.10 allows a trial judge to permit an insanity defense "in the interests of justice," even if the notice requirements are not met prior to trial. It appears that in this case Ronson's counsel substantially complied with the notice requirements. Given that a grant of continu-

ant serves upon the people and files with the court a written notice of his intention to rely upon such defense. Such notice must be served and filed before trial and not more than thirty days after entry of the plea of not guilty to the indictment. In the interest of justice and for good cause shown, however, the court may permit such service and filing to be made at any later time prior to the close of the evidence.

No written notice was filed here within the statutory time period. In fact, Anolik was not retained until well past the thirty-day period.

3. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

4. The state contends that this case should be governed by the standards of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), which held that failure to comply with state procedural rules for voicing objections barred collateral attack of a conviction absent "cause" for not following procedural requirements and "prejudice" resulting from the violation alleged. In light of our finding that there was substantial compliance with the notice requirements of the New York statute in this case, we need not consider the application of the "cause and prejudice" test to noncompliance.

5. We are not called upon here to consider the constitutionality of the New York notice statute. As explained, *infra*, the issue here is not the validity of the notice requirement per se, but the failure of the trial judge to exercise his discretion in recognition of Ronson's sixth amendment rights by allowing the insanity defense to be raised at trial.

ance would have served to minimize any prejudice to the state resulting from the lack of formal notice, the refusal of the trial court to exercise discretion to allow Ronson to call Dr. Abrahamsen and to present an insanity defense, then, was a violation of Ronson's sixth amendment rights. *See Singleton v. Lefkowitz, supra,* 583 F.2d at 623.

While Ronson's counsel Anolik never filed a formal notice of intention to raise the insanity defense, it is clear that he did not intend or attempt to hide the issue from the state or the court. In fact, he gave actual notice in all but precise form. Anolik filed a copy of Dr. Abrahamsen's report with the calendar judge soon after the psychiatric examination was conducted. He also gave permission for the report to be released to the state before trial. At the first trial, Anolik moved to call Dr. Abrahamsen as a witness for the defense. After a mistrial was declared, Anolik wrote to the district attorney's office reserving the right to raise an insanity defense at any future trial. At the second trial, Anolik attempted to raise the defense again, but was denied the opportunity.

In these circumstances, it is difficult to credit the state's claim that it was not on notice of the possibility of an insanity defense. The psychiatric report, defense counsel's motion at the first trial to call Dr. Abrahamsen, and the letter to the assistant district attorney following the mistrial all indicated the strong possibility of such a defense. State procedural rules requiring notice of intent to raise defenses have been approved because they increase the flow of information to both sides in an action, thus "enhanc[ing] the fairness of the adversary system." *Wardius v. Oregon, supra,* 412 U.S. at 474, 93 S.Ct. at 2211. In this case, however, defense counsel's substantial compliance with the notice requirements removed any element of surprise from the insanity defense, and thus was "fair" in putting the state on notice of its existence.

In light of this, any prejudice to the state did not justify the total exclusion of the insanity defense. Though the state's failure to prepare its own case to prove Ron-

son's sanity or to have Ronson examined by its own doctor might have put the state at some disadvantage, this could have been dealt with through the granting of a continuance. As admitted by the assistant district attorney at the hearing before Judge Lasker, any prejudice to the state resulting from the fact that its psychiatrist would have to examine Ronson at a later date than Dr. Abrahamsen could be alleviated by removing from the jury any reference to dates of examinations.

There is also no possibility here that the insanity defense was a ploy, or was unsupported by any evidence. Dr. Abrahamsen's report provided sufficient support for raising an insanity defense, and for the inference that the doctor's testimony would be "relevant and material to [Ronson's] defense." *Singleton v. Lefkowitz, supra,* 583 F.2d at 623. Since there was no real question at trial that Ronson had committed the shooting, a claim of temporary insanity was crucial to his defense. Consequently, the aim of maximum "truth gathering" would be served by allowing an insanity defense to be presented. In this case, then, the decision to preclude totally the defense of insanity violated petitioner's sixth amendment rights.

Order affirmed.