STATE of Minnesota, Respondent,

v.

Carl Lee SANDBERG, Appellant.

No. C7–86–8.

Supreme Court of Minnesota.

May 29, 1987.

C. Paul Jones, State Public Defender, Michael F. Cromett, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., James P. Farly, Sp. Asst., St. Paul, Raymond F. Schmitz, Olmsted Co. Atty., Rochester, for respondent.

AMDAHL, Chief Justice.

On April 12, 1985, a jury convicted appellant Carl Lee Sandberg of criminal sexual conduct in the fourth degree, Minn.Stat. § 609.345(b) (1984); Sandberg was sentenced to a term of imprisonment of 1 year and 1 day, execution stayed, probation for 5 years pursuant to certain conditions. Sandberg's conviction was affirmed by the Court of Appeals, *State v. Sandberg*, 392 N.W.2d 298 (Minn.App.1986), and we granted Sandberg's petition for further review. We affirm in part, reverse in part, and remand for a new trial.

Before this court, Sandberg raises the following issues: (1) whether Minn.R. Crim.P. 9 requires a defendant to disclose as possible trial witnesses persons already disclosed by the state; (2) whether the trial court committed reversible error by precluding him from calling five witnesses, disclosed the day before trial, who would testify concerning the complainant's reputation for truthfulness and about specific acts of conduct of the complainant; (3) whether the trial court committed reversible error by allowing a police officer to testify concerning the reporting practices of adolescent victims of sexual assault; and (4) whether the trial court improperly commented during the defendant's closing argument.

1. Sandberg's first argument is that Minn.R.Crim.P. 9 does not require a defendant to disclose as possible trial witnesses persons already disclosed by the state.

Pursuant to Rule 9.01 of the Minnesota Rules of Criminal Procedure, the state provided Sandberg with a list of names of the persons whom it intended to call as trial witnesses; the list included Rochester Police Officer John P. Jones and Zumbro Mental Health Center counselor Michelle Val-

letta. At the same time, the state requested, pursuant to Rule 9.02 of the Rules of Criminal Procedure, that Sandberg furnish the state with a list of names of the persons whom Sandberg intended to call as trial witnesses. Sandberg never furnished the state with such a list.

At trial, the state rested without calling either Officer Jones or Michelle Valletta as a witness. Sandberg asked the court for an order compelling Officer Jones and Valletta to testify. The court denied Sandberg's request on the ground that Sandberg should have disclosed both persons as witnesses.

■ Rules 9.01, subd. 1(1)(a) and 9.02, subd. 1(3)(a) of the Minnesota Rules of Criminal Procedure require, respectively, that the state and the defendant disclose the names of persons that party intends to call as trial witnesses.[1] Both rules require full disclosure, and there is nothing in the text of either rule which suggests that an exception is made for persons already disclosed by the other side. This leads us to conclude that Minn.R.Crim.P. 9 requires both the state and the defendant to make a complete disclosure of those persons that party intends to call as witnesses, even if a person has already been listed by the other side. While this practice might result in the name appearing on both the state's and the defendant's list, we can see no resulting harm, and problems similar to those in this case will be avoided.

In this case, because Sandberg had not listed either Jones or Valletta as an intended witness, the trial court did not permit Sandberg to call either person as a witness. We find that under the facts of this case, the trial court's refusal to allow Sandberg to call either Jones or Valletta constituted an abuse of discretion;[2] we are unable to

---

**1.** Although each rule requires the disclosure of the names of persons that side *intends* to call as trial witnesses, there is no requirement that all persons listed actually be called at trial.

**2.** This is the first ruling by this court concerning the listing of witnesses required under Rule 9 of the Rules of Criminal Procedure. Whether one side must list a person as an intended witness even though the other side has already listed

that person is a matter of current debate among the bench and bar. The circumstances militate in favor of our conclusion that the imposition of a preclusionary sanction for the failure to list should not have been imposed.

We need not and do not decide the constitutionality of preclusion of defense witnesses as a sanction for statutory discovery violation. This is an issue which has been the subject of at least three law review articles. Clinton, *The Right to*

characterize the error as harmless. Accordingly, we reverse the conviction and remand for a new trial.

In *State v. Lindsey*, 284 N.W.2d 368, 373 (Minn.1979), we stated:

> The imposition of sanctions for violation of discovery rules and orders is a matter particularly suited to the judgment and discretion of the trial court. * * * Accordingly, we will not overturn its ruling absent a clear abuse of discretion. In exercising this discretion the trial judge should take into account: (1) the reason why disclosure was not made; (2) the extent of prejudice to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant factors.

(citations omitted).

■ In this case, Sandberg did not list either Jones or Valletta as an intended witness because he believed that once the state had listed both persons as intended witnesses, he was not required to also list their names; although, under the holding of this case, Sandberg's explanation was incorrect, it was reasonable when made. The most important factors are that the state had listed both Jones and Valletta as intended witnesses; that the state had called both Jones and Valletta as witnesses at an omnibus hearing and did possess the reports of both persons; that two days before trial, Sandberg had a letter hand delivered to the county attorney asking: "Can we rely on the fact that Michelle Valletta [and] John Paul Jones * * * will be at [Sandberg's trial] on April 11, 1985?"; that because the state never responded to the letter, at the opening of trial Sandberg

again asked if he could rely on the presence of Jones and Valletta, and the state indicated that both persons would be available during the trial; and, finally, that after the state had rested without calling either Jones or Valletta, Sandberg was talking with Valletta when the assistant county attorney had approached Valletta and informed her that she was under state subpoena and that she did not have to remain in court unless there was a court order ordering her to be present. We also think that the state's argument that it would be prejudiced if Sandberg were allowed to call Jones and/or Valletta as a witness in that it would be forced to switch from an accrediting to a discrediting posture has a hollow ring. It is on these grounds that we conclude that the trial court abused its discretion by precluding the testimony of both witnesses.

Although we reverse and remand for a new trial, we feel it appropriate to address two of the three other arguments raised by Sandberg.

2. Sandberg's second argument is that the trial court committed error by precluding him from calling five witnesses, disclosed the day before trial, who would testify concerning the complainant's reputation for truthfulness and about specific acts of conduct of the complainant.

About 1 month after the state had furnished Sandberg with the names of persons it intended to call as trial witnesses, and about 8 months prior to trial, Sandberg requested that the state also furnish him with those persons' records of convictions. Because none of the persons listed by the

*Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials,* 9 Ind.L.Rev. 711 (1976); Westen, *The Compulsory Process Clause,* 73 Mich.L.Rev. 71 (1974); Note, *The Preclusion Sanction—A Violation of the Constitutional Right To Present a Defense,* 81 Yale L.J. 1342 (1972). More importantly, this is an issue which will be addressed by the U.S. Supreme Court. After twice refusing to hear cases in which the issue is whether the exclusion of defense witnesses merely for the failure to abide by a discovery rule impermissibly infringes upon an accused's constitutional rights, *Smith v. Jago,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985) (White, Burger, and Brennan, JJ.,

dissenting to the Court's refusal to grant certiorari), and *Taliaferro v. Maryland,* 461 U.S. 948, 103 S.Ct. 2114, 77 L.Ed.2d 1307 (1983) (White, Brennan and Blackmun, JJ., dissenting to the Court's refusal to grant certiorari), the Court has granted certiorari in the case of *State v. Taylor,* 141 Ill.App.3d 839, 96 Ill.Dec. 189, 491 N.E.2d 3 (1986) *cert. granted sub nom. Taylor v. Illinois,* —— U.S. ——, 107 S.Ct. 947, 93 L.Ed.2d 996 (1987). In granting certiorari, the Court limited the issue to: "When, if ever, will [the] Sixth Amendment allow [a] state to exclude [a] material defense witness as sanction for [a] statutory discovery violation?"

state as intended witnesses had a prior record of convictions, and because the complainant was a juvenile, the state never responded to Sandberg's request. Three days prior to trial, Sandberg specifically requested that the state provide him with information relative to the complainant's juvenile dispositions. The day before trial, Sandberg notified the state by letter that he intended to call five witnesses who would testify concerning the complainant's reputation for dishonesty and specific incidents of dishonesty; Sandberg stated that the state's failure to provide information concerning the complainant's juvenile dispositions necessitated the calling of the five witnesses.

At the beginning of trial, the trial court ruled that the state's failure to supply Sandberg with a record of the complainant's adjudications was not a violation of any discovery rule. The court then precluded Sandberg from calling any of the five witnesses on the ground that they were disclosed too late for trial preparation.

Responding to Sandberg's argument that the appropriate remedy should be a continuance, not preclusion, the court allowed Sandberg to make an offer of proof as to the expected testimony of each witness. The offer of proof showed that the witnesses would testify both to the complainant's reputation in the community for truthfulness and honesty, and to specific acts of conduct of the complainant. Sandberg argued that the testimony of these witnesses concerning specific acts of dishonesty by the complainant was admissible under Minn.R.Evid. 404(a)(2). In response, the state argued that the offer of proof was inadmissible; it argued that Sandberg was seeking to admit the evidence under Minn.R.Evid. 608, and that the criteria for admission under Rule 608 had not been met. Sandberg specifically responded that Rule 404(a)(2), not Rule 608, was the rule under which the testimony was admissible. The trial court rejected the offer of proof under Rule 404, stated that there had been a failure to disclose the witnesses within any pretrial time frame, and denied Sandberg's request for a continuance.

Initially, we note that the state's failure to supply Sandberg with any information concerning the complainant's juvenile adjudications did not violate any discovery rule. Rule 9.01, subd. 1(1)(a) of the Minnesota Rules of Criminal Procedure requires the state to disclose the names of persons whom it intends to call as trial witnesses "together with their prior record of *convictions.*" (Emphasis added.) By statute, a juvenile adjudication is not deemed to be a conviction of crime. Minn. Stat. § 260.211, subd. 1 (1986). In addition, Rule 609(d) of the Minnesota Rules of Evidence generally precludes the use of juvenile adjudications for impeachment purposes; when a defendant does wish to use juvenile adjudications to impeach the credibility of a witness, the proper procedure is to request the trial court to examine such records and rule on their admissibility. *State v. Schilling,* 270 N.W.2d 769, 773 (Minn.1978).

We now turn to whether the trial court committed error by precluding Sandberg from calling any of the five witnesses. At trial, Sandberg specifically argued that the testimony of the witnesses was admissible under Rule 404(a)(2) of the Rules of Evidence; he specifically rejected Rule 608 as being the rule under which the testimony was admissible.

The offer of proof indicates that Sandberg sought to introduce the testimony of the witnesses for purposes of attacking the credibility of the complainant. For this purpose, the testimony was clearly not admissible under Minn.R.Evid. 404, and the trial court properly precluded the witnesses from testifying. Before this court, Sandberg argues that the testimony of the witnesses is admissible under Rule 608. Whether the testimony was admissible under Rule 608 is a question not properly before this court and is not reviewable. *See State v. Collins,* 276 Minn. 459, 472, 150 N.W.2d 850, 859 (1967), *cert. denied,* 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968). The trial court never ruled on whether the testimony was admissible under Rule 608 because Sandberg specifically

argued that he sought to admit the testimony under Rule 404; Sandberg's insistence upon Rule 404 as the rule for admissibility was an error for which we are not responsible and, because it did not affect substantial rights, we need not correct. Since the witnesses' testimony was inadmissible, preclusion, even if error, was harmless error.

3. Sandberg's third argument is that the trial court committed reversible error by allowing a police officer to testify concerning the reporting practices of adolescent victims of sexual assaults. Sandberg argues that the police officer was not qualified to testify about this subject and that the content of his testimony was inadmissible.

The facts of this case are that the complainant never reported the sexual assault to the police; instead, the police learned of the complainant's identity through Sandberg. At trial, the state called Detective Jack LeClair of the Rochester Police Department. Detective LeClair testified that he had been with the Rochester Police Department for 15 years; that for the past 9 years he had been a detective investigator assigned to the juvenile division; that he had investigated over 500 cases of child abuse; and that he had attended or been involved in 26 classes on the subject of child abuse. Over defense objection, Le-Clair was permitted to testify that his experience and training in the area of juvenile sex abuse demonstrated that sexually abused children, both inside and outside the family, will often not report the abuse, and that if it is disclosed, it will usually come out in group sessions, treatment, or in school.

▋ With respect to the argument that LeClair was not qualified to testify as an expert on the subject of sexual abuse of juveniles, a witness may be qualified as an expert "by knowledge, skill, experience, training or education * * *." Minn.R.Evid. 702. The qualification of an expert is a matter resting in "the discretion of the trial court, and a ruling admitting expert testimony will not be disturbed on appeal unless there is an abuse of discretion." *Housing and Redevelopment Authority v.*

*Kieffer Brothers Investment and Constr. Co.,* 284 Minn. 516, 521, 170 N.W.2d 862, 865 (Minn.1969). We find that a sufficient foundation was established for the court to allow LeClair to testify as an expert.

▋ With respect to the argument that the content of LeClair's testimony was inadmissible, in cases where the victim of sexual assault is an adolescent, the admissibility of expert testimony concerning the behavioral characteristics typically displayed by adolescent sexual assault victims is a matter resting in the discretion of the trial court. *State v. Hall,* 406 N.W.2d 503 (Minn.1987). We find that the trial court did not abuse its discretion by admitting the testimony of Detective LeClair. The complainant in this case was 13 years old at the time of the assault and 15 years old at the time of trial, and the scope of Le-Clair's testimony on the subject of sexually abused juveniles was limited to his statement that a delay in reporting the assault is not unusual.

4. Because we reverse and remand for a new trial, we do not address Sandberg's argument that the trial court improperly commented during his closing argument.

Affirmed in part, reversed in part, and remanded for a new trial.